IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Michael Jacobs,                                                    Case No. 3:11CV2339

       Plaintiff

       v.                                                              **ORDER**

General Electric Inc.,

       Defendant


       This is an employment discrimination case in which plaintiff, Michael Jacobs, claims that his former employee, defendant, General Electric Company (GE): 1) violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq*.; 2) violated the Ohio anti-discrimination against disabled individuals act, O.R.C. § 4112.02(a)(13); retaliated unlawfully against him after he filed charges of discrimination against GE with the Ohio Civil Rights Commission (OCRC); and interfered with his rights under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140.

       Pending is GE's motion for summary judgment. (Doc. 25). For the reasons that follow, I grant the motion.

**Background**

       GE hired plaintiff as a service technician on September 11, 1995, when he was forty-five years old. During the time he worked for GE, plaintiff was assigned to the Toledo Zone and covered by a collective bargaining agreement between GE and IBEW Local 8.

On August 2, 2007, plaintiff suffered a work-related ankle injury that left him wheelchair-bound for six months. While off work during that period, he received workers compensation benefits.

On his return to work, according to plaintiff, "everything changed." (Doc. 27 at 5). For a while GE assigned him to a service area in the western part of the Toledo Zone. To get to his assignments, he had to pass through areas assigned to other servicemen. In the meantime, he had asked about light duty work, but GE told him none was available. However, during the month before he returned to work in March, 2008, plaintiff had trained a new serviceman, Jermaine Perry, who had joined the service staff in June, 2007.

The decline in the overall economy that began at about that time had a significant effect on the call volume in the Toledo Zone. That volume dropped from 9,956 in 2007, to 7,751 in 2008. As a result, GE stopped providing service to some areas in the Toledo Zone. By September, 2008, as volume continued to fall, GE decided to reduce its service workforce.

Under the collective bargaining agreement, layoffs went by seniority – "last hired, first fired." This led to the layoff first of a forty-eight year old co-worker on September 9, 2008. A year later, on September 17, 2009, after call volume had continued to drop, GE laid off plaintiff, as the person with the least seniority.

Plaintiff asked for a transfer to the Detroit Zone. GE, stating there were no openings in that Zone, denied that request. It placed plaintiff on temporary layoff due to lack of work. During that period, call volume in the Toledo Zone dropped further from 7,751 in 2008, to 6,384 in 2009, and it continued to decline in the six-month period after plaintiff's lay off. On February

25, 2010, GE notified plaintiff that, due to continued decrease in current and anticipated call volume, it was changing his lay off status from temporary to indefinite.

Under the collective bargaining agreement, plaintiff was to be terminated if not recalled from layoff for twelve months. GE, not having recalled plaintiff for one year, terminated him under the agreement on September 26, 2010. Another co-worker, who was ten years younger than plaintiff and whom GE had laid off on October 9, 2009, due to low call volume, lost his job on October 9,2010.

GE notified plaintiff of his pension benefits. On November 3, 2010, plaintiff chose to retire so that he could receive his pension. He has since received a monthly pension, but he must pay $120 a month for healthcare benefits, instead of the $80 a month he had paid while employed.

In the meantime, on February 8, 2010, about five months after GE placed plaintiff on temporary layoff status, he filed an age and disability discrimination complaint with the OCRC. The Commission found no probable cause on November 18, 2010.

At the crux of this case is plaintiff's contention that he, as a member of two protected classes (over forty and disabled), was discriminated against, and then, after he filed his OCRC complaint, retaliated against – all of which played a role in his termination.[1] To show discriminatory treatment, plaintiff points to two employees whom he claims were comparable, but whom the company treated differently.

---

[1] Plaintiff also claims that his payment as a retiree of a greater portion of his health insurance premium interferes with his rights under ERISA. His opposition to GE's motion for summary judgment fails adequately to place that contention in issue, and his claim is without merit.

3

The employees are Jim Craig and Jon Ren. GE did not hire Craig or Reno after terminating the plaintiff. Indeed, GE has not hired another serviceman for the Toledo Zone since plaintiff left. Since then there have been only two service personnel in the Toledo Zone.

Plaintiff points to Jim Craig and Jon Reno as allegedly similarly-situated. Craig and Reno work in the Detroit Zone, and are covered by a collective bargaining agreement with IBEW Local 54. Four years before plaintiff's termination, Craig had requested a transfer to the Detroit Zone. GE granted that request. After plaintiff was gone, Craig handled Toledo Zone service calls from time-to-time. That he has done so, according to plaintiff, reflects more favorable treatment of a younger employee.

Plaintiff, however, admits he does not know the circumstances of Craig's transfer to the Detroit Zone. (Pl. Dep. 170-171). He has not shown that, unlike when Craig sought transfer, any openings existed in the Detroit Zone.[2]

Reno was never in the Toledo Zone as his duty station. There is nothing in the record indicating he ever transferred to or from Toledo. Though he, as a team leader, occasionally trained Toledo Zone service employees and took inventory, plaintiff has presented no evidence to dispute GE's contention that Reno's regular place of work was the Detroit Zone.

## Discussion

### 1. Age Discrimination

Having not presented any direct evidence of discrimination, plaintiff must, to prevail on his age discrimination claim, must meet the burden shifting standard of *McDonnell Douglas*

---

[2] Reno testified that GE has laid off Detroit Zone service technicians since Craig's transfer there. (Reno Dep. 21). Plaintiff has presented no evidence to the contrary.

*v. Green*, 411 U.S. 791 (1973). To do so, he must first establish a *prima facie* case of discrimination; if he does so, the burden of production shifts to GE to articulate a legitimate, non-discriminatory reason for its actions; if it does so, then plaintiff must prove that it is more likely than not that the articulated reasons are not the real reasons for loss of job, but that GE offers them simply as a pretext to conceal its discriminatory motive.

To establish a prima facie case of age discrimination, plaintiff bears the initial burden of proving he: (1) he was at least 40 years of age at the time of the alleged discrimination ("a member of a protected class"); (2) he was subjected to adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person." *Lilley v. BTM Corp.*, 958 F.2d 746, 752 (6th Cir. 1992).

To pass this first hurdle, plaintiff must show that the comparable employees to which he points, Craig and Reno, are similarly situated. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992). Among the factors a court is to consider in determining whether two employees are similarly situated are whether:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583.

These are not "one size fits all" factors. "[T]hese factors generally are all relevant considerations in cases alleging differential disciplinary action," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir.1998), but courts

> should not assume . . . that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make

5

>an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in [*Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir.1994)], the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects."

*Ercegovich*, 154 F.3d at 352 . (footnotes and select citations omitted).

Despite plaintiff's arguments to the contrary, plaintiff is similarly situated to neither Craig nor Reno. While all three had the same supervisor, their circumstances differed substantially. When Craig sought a transfer to Detroit, positions were available. When plaintiff asked, in response to learning he was to be laid off, also to transfer, there were no positions in Detroit. While plaintiff expresses disbelief at this contention, he has presented no evidence to support his speculation. But he must do so to show disparate treatment and meet this element of his *prima facie* case.

Unlike plaintiff, Reno was never assigned to Toledo on a permanent basis. While both he and Craig occasionally worked in the Toledo Zone, nothing in the record supports plaintiff's contention that they replaced him, either separately or jointly.

These are crucial and dispositive distinctions that make clear that plaintiff and the comparables were not similarly situated.

Even if plaintiff could establish a *prima facie* case, he cannot meet his burden of proving pretext. In response to GE's statements about declining call volume (and thus, less need for

service personnel),[3] plaintiff has offered no proof that a full-time position existed, much less was filled, after he left.

There are no disputes of material fact sufficient to warrant sending plaintiff's age discrimination claim to a jury.

### 2. Disability Discrimination

There are three elements for an age discrimination claim under Ohio Revised Code § 4112.02(A): 1) the plaintiff had a disability; 2) GE took adverse employment action against him because of his disability; and(3) despite his disability, he was able to perform the essential functions of his job. *E.g., Ogilbee v. Bd. of Educ. of Dayton Pub. Schs.*, 2010 WL 1732715, at *4 (Ohio App.). Plaintiff cannot prevail on this claim.

To establish that he is legally "disabled," plaintiff must show either that: 1) he had an impairment that substantially limited one or more major life activities; 2) he had a record of such impairment; or 3) he was regarded as having such an impairment. *Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir.2004). The only disability that plaintiff claims to afflict him is his broken ankle, which occurred over two years before his lay off and three years before his discharge and for which he received workers compensation.

Plaintiff has provided no evidence whatsoever – medical or otherwise – that shows his injury was anything but temporary. As such, the injury is not, as a matter of law, a disability as the statute uses that term. *See*, *e.g.*, *Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 582 (6th Cir.

---

[3] Lack of work is, of course, a completely legitimate, non-discriminatory reason for terminating an employee. *See, e.g.,Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 894-95 (7th Cir. 2001).

2007); *see also Plant, supra*, 212 F.3d at 938 ("temporary physical conditions . . . do not generally constitute substantial impairments" § 4112(A)).

Plaintiff does not claim, moreover, that his ability to perform life's ordinary and essential functions remains impaired. Nor does he allege, much less prove, that he could not perform his ordinary duties without some sort of accommodation, which he sought, and which GE denied to him.

There is, moreover, no evidence whatsoever that GE considered or treated plaintiff as disabled.

Finally, plaintiff has presented no proof that any putative or perceived disability caused GE to terminate him. *See Ogilbee*, *supra*, 2010 WL 1732715, at *4; *see also Lewis v. Humboldt Acquisition Corp., Inc*., 681 F.3d 312, 321 (6th Cir. 2012).

GE is entitled to summary judgment on plaintiff's disability discrimination claim.

### 3. Retaliation

To prevail on his retaliation claim, which he asserts under both the ADEA and Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, plaintiff must prove: 1) he engaged in an activity protected by the ADEA and/or ADA; (2) GE was aware he engaged in such protected activity; 3) GE thereafter took an adverse employment action against him; and 4) there was a causal connection between the protected activity and the adverse employment action. *E.g., Johnson v. U.S. Dep't of Health & Human Servs*., 30 F.3d 45, 47 (6th Cir. 1994). This showing triggers *McDonnell Douglas* burden shifting.

Plaintiff cannot meet this initial burden because he has produced no evidence of a causal connection between his lay off and subsequent termination and his alleged protected activity of

filing charges with the OCRC of age and disability discrimination on February 8, 2010, and, with the Equal Employment Opportunity Commission, of retaliation on June 6, 2011.

First, as GE points out, GE had already laid plaintiff off well before he filed any of his charges. It had done so, moreover, on the same basis – lack of work – that remained in effect and led to his final termination. As noted above, plaintiff has presented no evidence that condition existed and then persisted throughout the entire year from initial layoff to final termination. Just as plaintiff loses on his ADEA claim because he could not prove that the "no work" explanation was pretextual, he cannot show that any of his charges caused his job loss.

In any event, even if plaintiff could prove a *prima facie* case of retaliatory action by GE, he cannot meet his burden of disproving GE's explanation for its actions. In face of GE's stated reason for terminating him, plaintiff has not shown that the call volume returned to a level that might have justified refilling the position left empty when he left GE.

GE is entitled to summary judgment on plaintiff's retaliation claim.

## Conclusion

For the forgoing reasons, I conclude that GE is entitled to summary judgment as to all plaintiff's claims. It is therefore

ORDERED THAT GE's motion for summary judgment (Doc. 25) be, and the same hereby is, granted.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge